In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2991

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY M. LILLY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 92 CR 128--Sarah Evans Barker, Chief Judge.

Argued September 8, 1999--Decided March 17, 2000

   Before POSNER, Chief Judge, and BAUER and RIPPLE,
Circuit Judges.

   RIPPLE, Circuit Judge.  In 1993, Larry M. Lilly
was convicted of securities fraud and tax
evasion. See 15 U.S.C. sec.sec. 77q(a) & 77x and
26 U.S.C. sec. 7201. Five years later, in 1998,
Mr. Lilly filed a "Petition for Clarification" in
which he sought to have the district court
declare that he had satisfied his restitution
obligation. After the district court issued an
order stating that Mr. Lilly had not, in fact,
satisfied his restitution obligation, Mr. Lilly
filed a notice of appeal in this court. We,
however, do not reach Mr. Lilly's substantive
claims because, as we explain more fully below,
Mr. Lilly's notice of appeal was untimely.
Therefore, we lack jurisdiction over this appeal
and must dismiss it.

I
BACKGROUND
A.

   Until his resignation in 1989, Mr. Lilly was the
pastor at Faith Baptist Church of Avon, Indiana.
As pastor of the church in the 1980s, Mr. Lilly
induced a number of church members and other
investors to purchase $1.6 million worth of
"Certificates of Deposit" that were supposed to
be used to finance church-related projects. Mr.
Lilly, however, put much of this money to his own

use-- buying airplanes, cars and houses for himself and for his family. At the same time, Mr. Lilly, along with his wife, underreported the couple's taxable income for several years in the late 1980s.

An investigation into these activities ultimately led to a multi-count, federal grand jury indictment against Mr. Lilly and his wife in September 1992. The indictment charged Mr. Lilly with 12 counts of securities fraud and charged him and his wife with 4 counts of income tax evasion. During the investigation of Mr. Lilly and his wife, the Government froze their assets and forced the sale of many of these assets, including their home. The proceeds from the sale of their house, which totaled $28,395.20, were placed in an escrow account administered by Mr. Lilly's attorney pending the outcome of the investigation. In December 1992, the prosecuting United States attorney sent a letter to Mr. Lilly's attorney regarding the release of the escrow funds. In that letter, the government attorney requested the immediate transfer of the escrow funds to the trustee for the Faith Baptist Church, which was by then in bankruptcy. According to the letter, the escrow funds were to be used by the church trustee to make partial restitution to the victims of Mr. Lilly's investment scheme. The letter also stated that the "[u]se of the escrow funds . . . will serve to reduce, by the same amount, any potential restitution order which may result from the conviction of Rev. Lilly in his pending criminal prosecution." Petition for Clarification, Ex.B. As a result of the prosecutor's request, Mr. Lilly's attorney released the $28,395.20 held in escrow on January 7, 1993, and issued a check in that amount to the church's trustee.

The case against Mr. Lilly and his wife later proceeded to trial, and the jury returned a guilty verdict against both of them on all counts. The district court conducted separate sentencing hearings for the two defendants. At Mr. Lilly's sentencing hearing, the district court imposed a 5 -year term of imprisonment to be followed by 3 years of supervised release; the court also ordered Mr. Lilly to pay $25,000 in restitution/1 to the Faith Baptist Church and to pay a statutory special assessment of $800. Under the terms of his sentence, Mr. Lilly was to satisfy the $25,000 restitution obligation by making installment payments through the Inmate Financial Responsibility Program, and then, while on supervised release, by paying any unpaid balance in monthly installments as directed by the U.S. Probation Office.

When Mr. Lilly took his direct appeal to this

court, we affirmed his conviction and sentence. See United States v. Lilly, 37 F.3d 1222 (7th Cir. 1994), cert. denied, 513 U.S. 1175 (1995). Mr. Lilly subsequently filed a petition under 28 U.S.C. sec. 2255. The district court denied Mr. Lilly's petition, and we affirmed the judgment of the district court in an unpublished order.

B.

Mr. Lilly has completed his prison term and is now on supervised release. In June 1998, while still on supervised release, Mr. Lilly filed a document entitled "Petition for Clarification" in the district court. In this filing, Mr. Lilly alleged that he had satisfied his $25,000 restitution obligation with the $28,395.20 payment that his lawyer had made with the escrow funds in January 1993. Mr. Lilly also maintained that "[t]he Court's order of restitution was unequivocal, plain, and did not indicate that it was in addition to the restitution already paid." Petition for Clarification at 2. Thus, he asked the district court to clarify "the restitution situation" by "declaring that the restitution ordered by this Court has been satisfied . . . ." Id.

The Government responded to Mr. Lilly's petition by stating that it had no objection to the district court issuing an order clarifying the matter, except that the Government did object to the court's making a finding that Mr. Lilly had satisfied his restitution obligation. According to the Government, "[t]here is absolutely nothing to indicate that [the sentencing court] intended the $28,395.20, released approximately two months before trial and four months before sentencing, to be complete satisfaction of Defendant's sentence relative to restitution." Government's Response to Petition for Clarification at 3. Rather, the Government maintained that, in light of the $900,000 for which Mr. Lilly could have been held liable in restitution, the court clearly contemplated that Mr. Lilly should pay the $25,000 in addition to any amount of restitution he already had paid. Moreover, the Government argued, at the time the payment was made, the Government did not consider the release of the $28,395.20 in January 1993 to have satisfied Mr. Lilly's future restitution obligation.

The district court considered Mr. Lilly's petition for clarification, but the court's order did not grant the relief Mr. Lilly ultimately sought. Instead, the court explained that the original sentencing order required Mr. Lilly to pay the $25,000 "over and above the prejudgment payment of $28,395.20 which he voluntarily made

in January, 1993" and that, like the other conditions of his supervised release, the $25,000 obligation had to be satisfied in full. District Court Order (July 16, 1998) at 4.

The district court granted Mr. Lilly's petition for clarification on July 16, 1998, and the court's order was entered on the docket the next day. Unhappy with the district court's disposition of his petition, Mr. Lilly sought an appeal in this court by filing a notice of appeal on July 30, 1998--more than 10 days after the district court entered its order.

II
DISCUSSION
A.

Because the timing requirement for a notice of appeal is both "mandatory and jurisdictional," a timely filed notice of appeal is a prerequisite to our jurisdiction. Browder v. Director, Ill. Dep't of Corrections, 434 U.S. 257, 264 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229 (1960)); United States v. Brown, 133 F.3d 993, 996 (7th Cir.), cert. denied, 523 U.S. 1131 (1998). Before oral argument in this case, the Government sought to have the appeal dismissed for lack of appellate jurisdiction on the ground that Mr. Lilly's notice of appeal was untimely. After considering the Government's motion and Mr. Lilly's response, a motion panel of this court denied the Government's motion to dismiss the appeal. The determination by the motion panel, however, did not resolve definitively the question of our jurisdiction, and we are free to re-examine this issue in our disposition. See American Fed'n of Grain Millers, Local 24 v. Cargill Inc., 15 F.3d 726, 727 (7th Cir. 1994) (explaining that a motion panel's decision is reviewable by the merits panel and is "merely tentative" because it is often based on a limited record). Thus, before we may adjudicate the merits of Mr. Lilly's appeal, we must first determine whether Mr. Lilly's notice of appeal was filed in timely fashion. See, e.g., Brown, 133 F.3d at 996.

In criminal cases, Rule 4(b) of the Federal Rules of Appellate Procedure provides that "a defendant's notice of appeal must be filed in the district court within 10 days after . . . the entry of either the judgment or the order being appealed."/2 Fed. R. App. P. 4(b)(1)(A). By contrast, for appeals in civil cases to which the Government is a party, Rule 4(a) provides that "the notice of appeal may be filed by any party within 60 days after the judgment or order being appealed from is entered." Fed. R. App. P. 4(a)(1)(B). Because Mr. Lilly filed his notice of

appeal more than 10 days after the district court entered its order granting his petition for clarification, our appellate jurisdiction is contingent on whether this appeal is properly labeled "criminal" or "civil."

The Government continues to urge us to dismiss this appeal for want of jurisdiction. According to the Government, we lack jurisdiction to hear this appeal because the district court lacked jurisdiction, in the first instance, to entertain Mr. Lilly's petition for clarification. Moreover, the Government submits that, even if Mr. Lilly's petition was properly before the district court, Mr. Lilly's appeal is a criminal appeal subject to Rule 4(b) notice of appeal filing requirements. Mr. Lilly maintains that we have appellate jurisdiction because this appeal is subject to the timing requirement of Rule 4(a) for appeals in civil matters. According to Mr. Lilly, his petition for clarification was in the nature of a writ of error coram nobis, which is a civil proceeding that would give rise to a civil appeal.

B.

It is true that a number of proceedings involving criminal matters are treated as civil for purposes of Rule 4's filing requirements. See, e.g., Browder, 434 U.S. at 265 n.9 (observing that habeas corpus is undeniably a civil proceeding to which the time limits of Rule 4(a) apply); United States v. Taylor, 975 F.2d 402, 403 (7th Cir. 1992) (holding that Rule 4(a)'s timing requirements apply to an appeal from an order granting or denying a criminal defendant's motion for the return of property under Fed. R. Crim. P. 41(e)); United States v. Craig, 907 F.2d 653, 657 (7th Cir.) (holding that Rule 4(a)'s time limits govern an appeal from a district court order granting or denying a petition for a writ of error coram nobis), amended on other grounds, 919 F.2d 57 (7th Cir. 1990), cert. denied, 500 U.S. 917 (1991). Thus, to determine the character of an appeal, we must look to the "substance and context" of the underlying proceeding. Betts v. United States, 10 F.3d 1278, 1283 (7th Cir. 1993). From the substance and context of the proceeding in this case, it is clear that Mr. Lilly's appeal is subject to Rule 4(b)'s 10-day filing requirement. Mr. Lilly's petition for clarification asked the district court to clarify a condition of the supervised release it previously had imposed upon him. Specifically, Mr. Lilly asked the court to clarify whether the amount ($28,395.20) previously paid by him prior to sentencing fulfilled his obligation to pay $25,000 in restitution to the Faith Baptist Church. In

granting Mr. Lilly's petition, the district court responded directly to Mr. Lilly's inquiry, made clear that the $25,000 imposed at sentencing was intended to be an amount in addition to the funds that he had paid previously, and informed Mr. Lilly that he had not satisfied his restitution obligation.

There can be no doubt that the district court had the authority to entertain such a motion for clarification and to issue an order responding to Mr. Lilly's inquiry. When Mr. Lilly was sentenced in 1993, the criminal code authorized the district court to impose an obligation of restitution as a condition of Mr. Lilly's supervised release. See 18 U.S.C. sec. 3583(d) (1993) (referencing 18 U.S.C. sec. 3563, which sets forth conditions for probation, and authorizing the district court to impose a number of conditions listed in sec. 3563, including restitution, as a condition of a defendant's supervised release); see also U.S. Sentencing Guidelines Manual sec. 5E1.1(a)(2) (1992) (requiring the sentencing court to include a restitution requirement as a condition of a defendant's supervised release). Moreover, under sec. 3583, district courts retained the authority to terminate, modify or revoke a defendant's term of supervised release. See 18 U.S.C. sec. 3583(e) (1993). Although Congress has amended various provisions of sec. 3583, including sec. 3583(e), since 1993, those changes do not have a substantive impact on our discussion here, and the district court's authority to terminate, modify or revoke a term of supervised release under sec. 3583(e) remains essentially the same under the current statute./3 In addition to their authority over the term of supervised release, district courts continue to have the authority to modify, reduce or enlarge the conditions of supervised release at any time prior to the expiration or termination of a defendant's term of supervised release. See 18 U.S.C. sec. 3583 (e)(2); United States v. Navarro-Espinosa, 30 F.3d 1169, 1171 (9th Cir. 1994) (holding that, even if the district court lacked jurisdiction to correct a defendant's sentence under Fed. R. Crim. P. 35(c), sec. 3583(e)(2) authorized the court to modify the conditions of a defendant's supervised release); United States v. Allen, 2 F.3d 538, 539-40 (4th Cir. 1993) (holding that sec. 3583(e)(2) allows a district court to modify the conditions of supervised release without extending the term of that release).

As the text of sec. 3583 demonstrates, a district court retains ultimate responsibility for ensuring that a defendant has complied with the conditions of his supervised release. See

Gozlon-Peretz v. United States, 498 U.S. 395, 400-01 (1991) (noting that, with sec. 3583, Congress placed responsibility for overseeing a defendant's postconfinement monitoring with the sentencing court); Knight v. United States, 73 F.3d 117, 119 n.5 (7th Cir. 1995) (observing that "the district court monitors a convict's compliance with the terms and conditions of supervised release" under sec. 3583(e)), cert. denied, 519 U.S. 827 (1996); United States v. Spinelle, 41 F.3d 1056, 1058 (6th Cir. 1994) (stating that under sec. 3583(e), the sentencing court oversees the post-confinement monitoring of the defendant). Additionally, the committee notes to Rule 32.1 of the Federal Rules of Criminal Procedure state specifically that a defendant ought to have an opportunity to obtain from the district court a clarification of a term or condition of supervised release so that the defendant may have an opportunity to comply with the court's order without first having to violate it. See Fed. R. Crim. P. 32.1(b) advisory committee's note; see also United States v. Dempsey, 180 F.3d 1325, 1325-26 (11th Cir. 1999) (per curiam) (holding in favor of a defendant who, on a Rule 32.1(b) motion, had sought to have the conditions of his supervised release modified or clarified by the district court). Thus, when restitution is one of the conditions of supervised release, the district court retains jurisdiction to determine a defendant's compliance with this condition.

A proceeding in the district court related to whether a defendant has complied with a condition of supervised release is necessarily criminal in nature. Thus, an appeal from an order modifying or revoking a defendant's supervised release is subject to Rule 4(b)'s 10-day filing requirement for notices of appeal. See United States v. Johnson, 980 F.2d 1212, 1212 (8th Cir. 1992) (per curiam); see also United States v. Jeanes, 150 F.3d 483, 484 (5th Cir. 1998) (stating that an appeal from the denial of the defendant's motion for a modification of the terms of his supervised release was timely because the notice of appeal was filed within 10 days of the district court's decision); United States v. Cooper, 135 F.3d 960, 961 (5th Cir. 1998) (applying Rule 4(b) to a defendant's appeal from an order revoking the defendant's supervised release); United States v. Clark, 51 F.3d 42, 42-43 (5th Cir. 1995) (same). Similarly, we believe an appeal from a district court's exercise of its continuing authority to monitor a defendant serving a term of supervised release must satisfy the filing requirements for criminal appeals.

Mr. Lilly's petition for clarification invoked the district court's jurisdiction over the

conditions of his supervised release. Therefore, to perfect an appeal from the district court's order granting his petition, Mr. Lilly needed to comply with the rules pertaining to criminal appeals. Mr. Lilly's notice of appeal was filed after the 10 days allowed by Rule 4(b) for criminal appeals. Accordingly, we must dismiss the appeal for lack of appellate jurisdiction./4

Conclusion

   For the foregoing reasons, Mr. Lilly's notice of appeal was filed too late, and we must dismiss this appeal for lack of appellate jurisdiction.

APPEAL DISMISSED


/1 The district court apparently imposed the restitution obligation as both an independent part of the sentence and as a condition of supervised release. At no point has Mr. Lilly argued that, because he was convicted of offenses under Titles 15 and 26, restitution could not be imposed as an independent part of the sentence under 18 U.S.C. sec. 3663 as it was written in 1993. Here, we deal with the restitution obligation as a condition of supervised release. See 18 U.S.C. sec. 3583(d).

/2 When calculating the deadline for filing under Rule 4(b), "10 days" means "10 days." For purposes of the Federal Rules of Appellate Procedure, intermediate weekend days and legal holidays are counted unless the filing period is 7 days or less. See Fed. R. App. P. 26(a)(2).

/3 In 1993, 18 U.S.C. sec. 3583(e) read:

(e) Modification of conditions or revocation.-- The court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)--

(1)  terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the person released and the interest of justice;

(2)  extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the

provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

(3)   revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony; or

(4)   order the person to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

18 U.S.C. sec. 3583(e) (1993).

  Congress made the amendments to sec. 3583(e) in 1994. Specifically, Congress changed the word "person" to "defendant" in subsections 3583(e)(1) and (e)(4). See 18 U.S.C. sec. 3583(e) (Supp. 1999). Congress also rewrote sec. 3583(e)(3) so that it now reads:

(3)   revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

18 U.S.C. sec. 3583(e)(3) (Supp. 1999).

/4 We cannot accept Mr. Lilly's attempt to style his petition for clarification as a petition in the nature of a writ of error coram nobis. See Carlisle v. United States, 517 U.S. 416, 428-29 (1996). As we have noted, Mr. Lilly's petition for clarification asked the district court to make a determination, in accordance with the court's supervisory role over the conditions of Mr. Lilly's supervised release, that he had satisfied his restitution obligation. A writ of error coram nobis would not have been appropriate under these circumstances, especially because an appeal to this court was otherwise possible. This extraordinary writ is only available to correct errors of "'the most fundamental character.'" United States v. Morgan, 346 U.S. 502, 512 (1954) (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)); United States v. Mischler, 787 F.2d 240, 241 n.1 (7th Cir. 1986) (quoting Morgan).