In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1564

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOEL C. MONTEIRO,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00 CR 20042--Michael P. McCuskey, Judge.

ARGUED SEPTEMBER 20, 2001--DECIDED OCTOBER 26, 2001

  Before RIPPLE, KANNE and ROVNER, Circuit
Judges.

  RIPPLE, Circuit Judge.  Joel Monteiro
pleaded guilty to one count of access
device fraud. As a special condition of
his supervised release following a term
of imprisonment, the district court
ordered that Mr. Monteiro's person and
property be subject to unlimited,
warrantless search and seizure by any law
enforcement officer. Mr. Monteiro
objected to the condition, but the
district court overruled his objection.
Mr. Monteiro now appeals the imposition
of the special condition. For the reasons
set forth in the following opinion, we
vacate the imposition of the special
condition of supervised release and
remand the matter to the district court
for reconsideration.

I

BACKGROUND

A.  Facts

  In October 1998, the Champaign,
Illinois, Police Department learned that
fraudulently obtained merchandise was
being delivered to Mr. Monteiro's address
at 1506 Holly Hill Drive in Champaign,
Illinois. That same month, Adam J. Greene
of Atlanta, Georgia, contacted the
Champaign Police Department to report

that someone residing at the Holly Hill Drive address had used his name and social security number to obtain credit and purchase merchandise. A subsequent investigation by Champaign police confirmed that Mr. Monteiro had used Greene's name and personal identifiers to establish a credit account at Spiegel and that Mr. Monteiro had purchased several articles of clothing on the account totaling $874.81. These purchases had been delivered to the Holly Hill Drive address.

The investigation also revealed that Mr. Monteiro had used the name of "David J. Walker" to establish another credit account with Spiegel and that, in December 1998, he had purchased bed linens and a stereo system totaling $1,008.72. These items also had been delivered to his address. On November 25, 1998, Mr. Monteiro again used the name of "David J. Walker" to purchase a $270 facsimile and telephone system from Ameritech. Mr. Monteiro signed the name "Steele" when he accepted delivery of the package at his Holly Hill Drive address. In December 1998, Mr. Monteiro used the Walker identity to purchase two computers, together worth $3,255.47, on credit from Sears. The computers were delivered to his Holly Hill Drive address.

Officers executed a search warrant at Mr. Monteiro's home on Holly Hill Drive on January 26, 1999. Officers seized, along with some of the merchandise Mr. Monteiro had purchased, several credit card statements, telephone bills and utility bills, indicating that Mr. Monteiro had obtained goods and services under various assumed names. Specifically, officers seized a Discover credit card bill in the name of Brian R. Miller for $7,129.06; it was addressed to Mr. Monteiro's Holly Hill Drive residence. Officers also seized a bill from DaMark International in the amount of $1,439.91 addressed to Greg Steele at 1506 Holly Hill Drive. They also seized an Ameritech bill in the amount of $2,030.41 addressed to David J. Walker doing business as "Commonwealth Electric," a fictitious company, at the same address. Finally, they seized several telephone bills for "Commonwealth Electric," Adam J. Greene, David Walker, and "Jamison Scott," the last from MCI

Worldcom in the amount of $1,836.45. All the bills were addressed to 1506 Holly Hill Drive.

## B.   District Court Proceedings

Mr. Monteiro was indicted on four counts of mail fraud in violation of 18 U.S.C. sec. 1341 and one count of access device fraud in violation of 18 U.S.C. sec. 1029(a)(2) and (c)(1)(b)./1 Pursuant to a plea bargain, Mr. Monteiro pleaded guilty to the one count of access device fraud on November 2, 2000.

On February 23, 2001, the district court sentenced Mr. Monteiro to 33 months' imprisonment, ordered him to pay $13,388.16 in restitution, and ordered him to serve a three-year term of supervised release after his prison term. As a special condition of the supervised release, the district court ordered that Mr. Monteiro's "person, residence, and vehicle shall be subject to search and seizure upon demand of any law enforcement officer." R.24 at 39. Mr. Monteiro objected to the condition, but the district court overruled his objection, explaining:

I just think in this gentleman's condition, everything he has done for the last 11 years has been a fraud. Every identification has been a fraud. Every-- he's always in possession of improper identification, and . . . I think the exceptional conditions of this defendant require exceptional vigilance--diligence and vigilance on the part of all law enforcement individuals to compel him to honestly represent who he is.

Id. at 43.

## II

## DISCUSSION

A special condition of supervised release must relate reasonably to several sentencing goals, including the rehabilitation of the defendant and the protection of the public. See 18 U.S.C. sec.sec. 3583(d)(1), 3553(a)(2)(B), (a)(2)(C). Mr. Monteiro submits that the special condition allowing a warrantless search of his person and his property at any time does not relate sufficiently to the goals of rehabilitation and

protection and would expose him to possible harassment and abuse from law enforcement. Indeed, he notes that the conduct that gave rise to the present case did not entail his possession of false identification, but rather his use of other individuals' names and personal identifiers, such as their social security numbers, to obtain credit and make purchases over the telephone. Mr. Monteiro relies upon United States v. Bass, 121 F.3d 1218 (8th Cir. 1997), and United States v. Prendergast, 979 F.2d 1289 (8th Cir. 1992). In these cases, the Eighth Circuit held that a special condition allowing warrantless searches of individuals on supervised release for the presence of alcohol or drugs could not stand because the condition was not related to the goals of rehabilitation and protection; the evidence did not show that the defendants had significant problems with drugs or alcohol. See Bass, 121 F.3d at 1224; Prendergast, 979 F.2d at 1293.

1.

We begin our assessment of Mr. Monteiro's contention by reviewing the statutory scheme that governs supervised release. Title 18, section 3583 permits a sentencing court to include a term of supervised release. See 18 U.S.C. sec. 3583(a). The United States Sentencing Guidelines require that a term of supervised release be imposed whenever a sentence of more that a year's imprisonment is imposed or when supervised release is required by statute. The Guidelines also make clear that a term of supervised release may be imposed in any other case in which a term of imprisonment is imposed. See U.S.S.G. sec. 5D1.1.

In imposing a term of supervised release, the district court may include, in addition to the mandatory conditions set forth in 18 U.S.C. sec. 3583(d), certain additional conditions of supervised release set forth in sec. 3563(b) and any other condition that the district court deems appropriate, even if that condition is not set forth explicitly in the statute. See 18 U.S.C. sec.sec. 3563(b), 3583(d). In imposing such conditions, the district court must take care to ensure that the particular condition imposed

(1) is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) is reasonably related to the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and

(4) is consistent with any pertinent policy statements issued by the Sentencing Commission.

United States v. Schave, 186 F.3d 839, 841 (7th Cir. 1999); see 18 U.S.C. sec.sec. 3583(d), 3553(a)(1), (a)(2)(B)-(D); U.S.S.G. sec. 5D1.3(b).

  The Sentencing Commission, interpreting this statutory mandate, has required explicitly that any such special condition be "reasonably related to . . . the nature and circumstances of the offense and the history and characteristics of the defendant; [and to] the need . . . to afford adequatedeterrence to criminal conduct; to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." U.S.S.G. sec. 5D1.3(b).

  The task of shaping the conditions of supervised release to achieve these statutorily mandated goals is committed to the sound discretion of the district court. Consequently, we review a district court's decision to impose a special condition of supervised release for an abuse of discretion. See Schave, 186 F.3d at 841; United States v. Brown, 136 F.3d 1176, 1186 (7th Cir. 1998); United States v. Schechter, 13 F.3d 1117, 1118 (7th Cir. 1994).

2.

In imposing the special condition in the case before us, the district court explained that Mr. Monteiro's history of fraudulent endeavors demonstrated the need for "exceptional vigilance" on the part of law enforcement officials to discourage recidivism. See R.24 at 43. A review of the record makes clear that the district court was on solid ground in concluding that Mr. Monteiro had a significant problem with identity fraud. The presentence investigation report, which is replete with acts of fraud by Mr. Monteiro dating back to his childhood, reveals that Mr. Monteiro has lead a life of fraud and deceit and regularly misrepresents his true identity./2 He repeatedly has given false names to police officers, has signed a fingerprint card with a false name after being arrested for possessing a forged check, and even recounted a fantastic but false story about his family background when interviewed by the writer of the presentence report.

We have no doubt that the district court acted well within its discretion in concluding that a search of Mr. Monteiro and his property would be likely to uncover any persistence by Mr. Monteiro in the pattern of deceit that had brought him before the court in the first place. Indeed, it was a search of Mr. Monteiro's home that uncovered evidence of the access device fraud for which he stands convicted here. The special condition, by permitting warrantless searches, clearly relates to the goals of rehabilitation and protection; it deters Mr. Monteiro from engaging in identity fraud after his release.

The courts of appeals in other circuits have upheld similar provisions for warrantless searches when necessary to curb the sort of criminal activity in which a defendant had a history of engaging. For instance, in United States v. Kingsley, 241 F.3d 828 (6th Cir. 2001), the Sixth Circuit upheld a special condition allowing for random, warrantless searches of the defendant or his property by the defendant's probation officer because it was a justifiable means for enforcing a prohibition against the possession of intoxicants or firearms and for detecting evidence of criminalactivity. Id. at 837. The court

of appeals noted that the district court explicitly had determined that the condition was necessary to protect the safety of the probation officer and the public:

Kingsley's crime of conviction implicated the illegal possession of multiple dangerous weapons. His prodigious twenty-year record of violent, reckless, and otherwise serious criminal activities, his lifetime abuse of omnifarious rationality-disabling and intellect-damaging intoxicants, his regular manifestations of troubling psychological derangement and emotional debilitation, and his customary total disregard of the law, cumulatively betrayed a dangerous anti-social personality potentially capable of any act of violence or felonious behavior. At minimum, this defendant has proven his propensity to habitually possess, and misuse, alcohol, narcotics, and weapons, with recurring disastrous results. Accordingly, special condition no. 4 was reasonably related to the nature and circumstances of his subject offense, his personal history and characteristics, deterrence of future recidivist felonious actions, rehabilitation of the offender, and protection of public safety. It imposed no greater liberty deprivation than necessary to achieve those valid objectives.

Id.

   In United States v. Germosen, 139 F.3d 120 (2d Cir. 1998), the Court of Appeals for the Second Circuit was faced with a special condition of supervised release that permitted the defendant to "be subject to search of his person and prop erty by probation." 139 F.3d at 131. The court noted that a district court may impose special conditions of supervised release to the extent they are "reasonably related" to the nature and circumstances of the offense, the history and characteristics of the defendant and the purposes of sentencing including the need for an adequate sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training and treatment. Id. (citing U.S.S.G. sec. 5D1.3b). The court therefore upheld a condition of release allowing for warrantless searches of the defendant or his property by his

probation officer to ensure compliance with a restitution order. See id. at 132. Germosen had posed as an attorney numerous times and had obtained a credit card by using his father's social security number. Id. Thus, because the defendant's "candor on his financial matters [was] demonstrably untrustworthy," id., a condition requiring that he submit to searches of his property was "entirely reasonable." Id. The court also noted that the Sentencing Commission recommends that, when a court imposes an order of restitution, it also should impose a condition requiring the defendant to provide the probation officer access to any requested information. Id. at 131 (citing U.S.S.G. sec. 5B1.4(b)(18)). The warrantless search condition fulfilled this need. Indeed, the court indicated that, because the purpose of the search was to ensure that the probation office would have the information necessary to monitor the defendant's compliance with the restitution condition, the district court had clarified that the searches would be limited to those that the probation department found necessary to secure information about the finances. See id.

As Mr. Monteiro points out, not all special conditions allowing searches of an individual and his property have been sustained by the courts. Indeed, in United States v. Prendergast, 979 F.2d 1289, 1293 (8th Cir. 1992), and also in United States v. Bass, 121 F.3d 1218, 1223-25 (8th Cir. 1997), the Eighth Circuit concluded that search authority aimed at ensuring that the defendants did not purchase or use alcohol could not stand as special conditions of supervised release because there was no evidence that alcohol abuse was related to the offense of conviction or that the defendant suffered from a dependency problem that would, unless checked, lead to further criminality. Here, by contrast, the district court has demonstrated adequately the relationship between the imposed search condition and the life pattern of Mr. Monteiro, including his commission of the charged offense.

3.

Mr. Monteiro further suggests that the

district court abused its discretion by allowing the warrantless searches to be carried out by any law enforcement officers, rather than by probation officers exclusively. In support of his contention, Mr. Monteiro relies on United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975), in which the Ninth Circuit held that the Federal Probation Act required warrantless searches of probationers conducted pursuant to a condition of probation to be carried out by probation officers. The court in Consuelo-Gonzalez concluded that allowing any law enforcement officers, as opposed to just probation officers, to execute the warrantless searches did not reasonably relate to the purposes of the Federal Probation Act. Id. at 266. That purpose, the court noted, was to provide "an amelioration of the sentence by delaying actual execution or providing a suspension so that the stigma might be withheld and an opportunity for reform and repentance be granted before actual imprisonment should stain the life of the convict." Id. at 263 (quoting United States v. Murray, 275 U.S. 347, 357 (1928) (reviewing the history of the Federal Probation Act)).

The special condition of Mr. Monteiro's supervised release is not based on the Federal Probation Act, however, but on the Sentencing Reform Act of 1984, Pub. L. No. 98-473, sec. 212(a)(2), 98 Stat. 1987 (codified as amended at 18 U.S.C. sec. 3551 et seq.). That act requires special conditions of supervised release to reasonably relate to the goals of rehabilitation and protection of the public and to involve no greater deprivation of liberty than reasonably necessary to effectuate those goals. See 18 U.S.C. sec.sec. 3582(d)(1), (d)(2), 3553(a)(2)(C), (a)(2)(D). We believe that the district court was entitled to conclude that allowing any law enforcement officer to carry out the search authorized by the special condition was related reasonably to those goals and did not entail a greater deprivation of Mr. Monteiro's liberty than reasonably necessary. The possibility of a search at any time works to deter Mr. Monteiro from resorting to fraud upon release from incarceration; such a deterrent facilitates Mr. Monteiro's rehabilitation by encouraging him to develop other skills to support

himself in a lawful way. This deterrent also protects the public by discouraging Mr. Monteiro from defrauding anyone else. To serve as an effective deterrent and thus facilitate the goals of sentencing, however, the possibility of a search must be real. The district court was entitled to consider whether the location of Mr. Monteiro's residence, his daily routine, as well as the burden on probation authorities, already burdened by excessive caseloads, made the possibility of a search by a probation officer all too remote to make the special condition effective.

In Owens v. Kelley, 681 F.2d 1362 (11th Cir. 1982), the Eleventh Circuit upheld the constitutionality of a condition of probation imposed by a state court subjecting the probationer to warrantless search by any law enforcement officer. The court reasoned that the condition would "satisfy constitutional muster if . . . the condition . . . reasonably related to the purposes of probation under Georgia law." 681 F.2d at 1366. The court determined that "the two essential purposes of probation in Georgia, as elsewhere are the rehabilitation of the probationer, and the protection of society." Id. at 1366-67. The court concluded that allowing any law enforcement officer to perform the warrantless search reasonably related to the two essential purposes because law enforcement officers could provide significant assistance to probation authorities by conducting searches pursuant to the probation condition. Id. at 1369. The court also observed that it may be desirable to allow any law enforcement officers to conduct the searches because excessive caseloads may limit the ability of probation supervisors to conduct searches. Id. at 1369 n.14 (citing Consuelo-Gonzalez, 521 F.2d at 270-71 (Wright, J., dissenting)).

Mr. Monteiro cannot point to any specific abuse that might ensue from this special condition. In the absence of a more concrete objection on his part, we cannot say that the district court abused its discretion in allowing any law enforcement officers to conduct a search of Mr. Monteiro. We note as well that, because the district court maintains continuing jurisdiction over the supervised release period, United States

v. Lilly, 206 F.3d 756, 762 (7th Cir. 2000), should Mr. Monteiro encounter the abuse that he suggests might occur, the district court can deal with the matter upon his application.

Section 3583(e)(2) allows a district court to modify the conditions of supervised release at any time during the term of their imposition pursuant to the Federal Rules of Criminal Procedure that relate to the modification of probation. See 18 U.S.C. sec. 3583(e)(2). Under Federal Rule of Criminal Procedure 32.1(b), a person may request a modification of the terms of the person's supervised release, and the district court has the authority to entertain such a motion. See Fed. R. Crim. P. 32.1(b) (requiring hearing and assistance of counsel unless person on supervised release requested the relief granted by the court); Lilly, 206 F.3d at 761-63 (holding that district court has authority to entertain a motion for clarification of the terms of supervised release); Fed. R. Crim. P. 32.1(b) advisory committee note ("The probationer should have the right to apply to thesentencing court for a clarification or change of conditions."). Should Mr. Monteiro encounter unreasonable harassment by law enforcement officers or other abuses of the authority granted them by the special condition, Mr. Monteiro may petition the district court for a modification of the special condition designed to curtail the abuses. See United States v. Dempsey, 180 F.3d 1325, 1325-26 (11th Cir. 1999) (per curiam) (holding in favor of defendant who, on a Rule 32.1(b) motion, had sought to have the conditions of his supervised release modified or clarified by the district court); Fed. R. Crim. P. 32.1(b) advisory committee note ("[I]n cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, the probationer should have recourse to the sentencing court when a condition needs clarification or modification.").

4.

Determining the propriety of the special condition's authorization of warrantless seizure of Mr. Monteiro, his home, or his car, however, requires further analysis. In authorizing the

imposition of special conditions of supervised release, Congress explicitly mandated that an imposed condition should involve "no greater deprivation of liberty than is reasonably necessary . . . ." 18 U.S.C. sec. 3583(d)(2). In Germosen, Chief Judge Winter wrote that, "[a]lthough district courts have broad discretion in tailoring conditions of supervised release to meet the specific circumstances of a given case, they do not have 'untrammeled' discretion." 139 F.3d at 131 (quoting United States v. Amer, 110 F.3d 873, 883 (2d Cir. 1997)). Nevertheless, if the condition is reasonably related to the ends of rehabilitation and the protection of the public from recidivism, it must be upheld. See Schave, 186 F.3d at 843.

Here, the special condition of supervised release reads as follows: "Your person, residence, and vehicle shall be subject to search and seizure upon demand of any law enforcement officer." R.24 at 39. By the plain wording of this condition, any law enforcement officer could not only search, but also seize Mr. Monteiro, his home or his car on demand. We cannot discern from this record the reason why the district court was of the view that such broad authority to seize was required to ensure that the ends of rehabilitation and protection of the public were met. Indeed, at oral argument in this case, counsel for the United States candidly acknowledged that, although such an interpretation was compatible with the plain language of the condition, he did not believe that such a result was foreseen by the district court.

Faced with language in a special condition of supervised release that the defendant argued was vague and overbroad, this court in Schave was able to avoid the difficulties posed by the language by giving the special condition a limiting construction. See Schave, 186 F.3d at 843. In this case, however, we believe the most appropriate course is to return this matter to the district court and to permit that court to craft more precisely the seizure authority of the special condition in order to ensure that it relates reasonably to the ends of rehabilitation and protection of the public.

Conclusion

   The imposition of the special condition allowing for the warrantless seizure of Mr. Monteiro and his property by any law enforcement officer upon demand is vacated, and we remand the matter to the district court for reconsideration in conformity with this opinion.

VACATED and REMANDED

FOOTNOTES

/1Section 1029 provides:

(a) Whoever--

. . .

   (2)  knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

   . . .

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

(c) Penalties.--

   (1) Generally.--The punishment for an offense under subsection (a) of this section is--

. . .

   (B)  in the case of an offense that occurs after a conviction for another offense under this section, a fine under this title or imprisonment for not more than 20 years, or both . . . .

18 U.S.C. sec. 1029(a)(2), (c)(1)(B).

/2 In sentencing determinations, a district court may rely on information contained in the presentence report, so long as the report bears the requisite indicia of reliability. United States v. Cavender, 228 F.3d 792, 802 (7th Cir. 2000). Mr. Monteiro does not contest the reliability of the presentence report upon which the court relied in determining the appropriate special condition to impose on his supervised release.