UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 15, 2005
Decided September 23, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2952

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>CHRISTOPHER L. TEMPLE,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 03 CR 126<br><br>Barbara B. Crabb,<br>*Chief Judge*. |

ORDER

Christopher L. Temple pled guilty to mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). On appeal, Temple only challenges the sentence in light of *United States v. Booker*, --- U.S. ----, 125 S. Ct. 738 (2005) and raises error with the Presentence Investigation Report (PSR) as well as the conditions of his supervised release. We find no error with the district court's Sentencing Guidelines calculations or the conditions of supervised release and, therefore, affirm Temple's sentence.

On February 5, 2004, Temple entered into a plea agreement with the United States, agreeing to plead guilty to mail fraud and money laundering. At the plea hearing, the United States proffered that, as to mail fraud count, an investor invested $75,000 with Temple based on Temple's fraudulent misrepresentations. As to money laundering, the United States proffered that it could prove that an investor gave Temple $100,000, which led to a $70,000 wire transfer to Temple's checking account in Spooner, Wisconsin. A $10,000 check from Temple's Spooner account was then sent to another investor in Ohio. The range of total amount lost based on the $75,000 check (mail fraud) and the $100,000 investment (money laundering) was more than $120,000 but less than $200,000.

At the sentencing hearing, Temple objected to the PSR's finding that Temple was associated with the United Citizens for Justice, the Militia of Montana, and the Aryan Nations. Temple denied any association with these groups and asked the court to strike the references as "inflammatory, inaccurate, and irrelevant." The United States indicated that it thought the references were appropriate for the Bureau of Prisons' ("BOP") information but that the alleged associations should not play any role in the court's sentencing determination. The district court agreed, overruled the objection, and made it clear that the purported connection between Temple and the groups listed played no role in the court's sentencing analysis, stating, "I should add that I don't believe it enters into the sentencing decision."

Temple next objected to the PSR's calculation that there were 80 individual victims. Temple argued that married couples he defrauded should be counted as only one victim rather than two as found in the PSR. The district court overruled that objection as well and ruled that a married couple in this case constituted two individual victims. Temple also objected to the supervision plan requirement that he provide public notification of his conviction in all articles he writes or in any publication he owns, edits or contributes to in any way. The court overruled this objection and found that Temple used articles he wrote and newsletters he produced to lure his victims to send him money to invest on their behalf. Based on this finding, the court stated that "it's critical to protect the public for the period of time that Mr. Temple would be on supervised release from his building up that same level of trust in people that they would turn over money to him and for that reason I will keep the requirement." Finally, Temple argued that the court should not use the guidelines range of 87-108 months as he had not admitted a loss of between $120,000 and $200,000. Instead, the court should begin its analysis with a base level of six but then increase only four levels based on the loss of $10,000. The court also rejected this motion for downward departure.

The district court imposed its sentence prior to the Supreme Court's decision in *Booker*. In attempting to predict the outcome of *Booker*, the court indicated that it would not impose a sentence under the guidelines based on facts not found by a jury nor admitted by Temple. The court also concluded that the guidelines were not severable

and would look to the guidelines as suggestive and not binding. Starting with a base level of six, the court added: (1) sixteen levels because the total loss, total investments minus all repayments, exceeded one million dollars; (2) four levels because the conduct involved more than 50 victims (counting each married couple as two victims); (3) two levels because the offense violated an administrative order from the Wisconsin Department of Securities; (4) two levels because Temple pled guilty to money laundering under 18 U.S.C. § 1956; and (5) two levels because Temple abused a position of trust. The district court subtracted three levels for acceptance of responsibility, yielding an offense level of 29 with a criminal history I and a corresponding range of 87-108 months. Based on these calculations, the court imposed a sentence of 72 months imprisonment with three years supervised release. The court reiterated that the public notification requirement was "[a]ppropriate and necessary to protect the public from the commission of further crimes pursuant to the provision of 18 United States Code Sections 3553(a)(2)(C) and 3583(d)" and ordered Temple to pay a $200 criminal assessment penalty and restitution of $1,019,579.09.

In the first alternative sentence, the district court ordered that Temple should be sentenced to 87 months imprisonment if the Supreme Court found that the guidelines were constitutional and mandatory. In the second alternative, if the Supreme Court deemed the Guidelines severable but disallowed judicial fact-finding, the district court would have imposed an 18-month sentence starting with a base level of 6, adding a 10-level increase based on an admitted amount of loss between $120,000 and $200,000, and departing downward 3 levels for acceptance of responsibility.

In this case, the district judge aptly predicted the Supreme Court's reasoning in *United States v. Booker*, ---U.S. ----, 125 S.Ct. 738 (2005). *E.g., United States v. Bryant*, No. 04-2850, 2005 WL 2000981, at *3 (7th Cir. 2005). Because she treated the guidelines as advisory, none of her suggested sentences run afoul of *Booker* or the Sixth Amendment. In particular, by treating the guidelines as advisory, the district court sidestepped the constitutional infirmity of judicial fact-finding coupled with mandatory application of the guidelines. *Booker*, 124 S.Ct. at 750. 764. Consistent with the Supreme Court's decision in *Booker*, the district court correctly computed the guidelines sentence just as she would have done before *Booker* to be 87-108 months, *see United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005), and then, because *Booker* demoted the guidelines from mandatory to advisory status, decided whether the guidelines sentence is the correct sentence to give the particular defendant. In this case, for this defendant, the district court imposed a sentence of 72 months imprisonment and three years supervised release and, as a result, we find no *Booker* error in this sentence.

In addition, we find no error in the court's factual determinations made during sentencing. We review factual findings for clear error. *United States v. Corral*, 324 F.3d 866, 870 (7th Cir. 2003). Under this deferential standard, we find that each of the district court's factual findings was supported by the record in this case, and each of Temple's questions of the court's factual findings amount to nothing more than a

difference in opinion rather than a lack of evidence in support. In addition, we conclude that the district court properly stated that it would not use the only controverted fact left unresolved by the district court in sentencing, Temple's purported association with the United Citizens for Justice, the Militia of Montana, and the Aryan Nation. We also find that the district court did not abuse its discretion in imposing the public notification requirement to Temple's supervised release. "The task of shaping the conditions of supervised release to achieve [ ] statutorily mandated goals is committed to the sound discretion of the district court." *United States v. Monteiro*, 270 F.3d 465, 469 (7th Cir. 2001). Consequently, we review a district court's decision to impose special conditions of supervised release for an abuse of discretion. *Id.* We agree with the district court that the public notification requirement is appropriate and necessary to protect the public from the commission of further crimes.

Finally, pursuant to *Booker*, we must evaluate the reasonableness of Temple's sentence. 125 S.Ct. at 765. We have recognized that sentences properly calculated under the guidelines are entitled to a rebuttable presumption of reasonableness. *See United States v. Mykytiuk*, 415 F.3d 606 (7th Cir.2005). Because the discretionary sentence imposed by the district court in this case is slightly below the properly calculated guidelines range, the district court is compelled to offer some justification based on the factors of 18 U.S.C. § 3553(a) to enable this Court to assess the reasonableness of the sentence imposed. *Dean*, 414 F.3d at 729.

In this case, the district court concluded that the applicable guidelines would have called for a sentence between 87 and 108 months and imposed a discretionary sentence of 72 months, noting that Temple's crime was serious, conducted over a long period of time, rested on extensive misrepresentations, and had a severe effect on the financial well-being of his victims, many of whom were elderly. The district court noted that the six-year sentence reflected the seriousness of Temple's crimes and protected the community. In imposing a sentence less than the advisory guideline range, the court explained that the sentence was not so long as to unduly delay Temple's opportunity to begin making restitution to his many elderly victims and also recognized his extensive cooperation with the authorities during the investigation of the offense. We find that the district court properly gave full consideration to various factors at play under § 3553(a) and the resulting sentence is reasonable. Temple's arguments contesting the district court's treatment of § 3553(a) are unconvincing.[1]

Accordingly, we AFFIRM Temple's 72 month sentence and conditions of supervised release as imposed by the district court.

---

[1] In supplemental briefing after the Supreme Court's ruling in *Booker*, the Government concedes the reasonableness of the six-year sentence.