*United States v. Oliveras*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2022

(Argued: June 30, 2023     Decided: March 15, 2024)

No. 21-2954

_____

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

ALEX OLIVERAS,

*Defendant-Appellant.*

_____

Before:          LYNCH, BIANCO, AND PÉREZ, *Circuit Judges.*

Defendant-Appellant Alex Oliveras appeals from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*), entered November 23, 2021, following his guilty plea, sentencing him principally to sixty-three months' imprisonment and a three-year supervised release term for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Oliveras's sole contention on appeal is that the

imposition of a special condition of supervised release that subjects him to suspicionless searches by a probation officer (the "Search Condition") violates the Fourth Amendment.

We conclude that the "special needs" doctrine of the Fourth Amendment permits, when sufficiently supported by the record, the imposition of a special condition of supervised release that allows the probation officer to conduct a suspicionless search of the defendant's person, property, vehicle, place of residence, or any other property under his or her control. However, the district court exceeded its discretion in imposing that special condition here because it failed to make the individualized assessment required to support the special condition under 18 U.S.C. § 3583(d), including a sufficient explanation as to how the condition is reasonably related in this particular case to the applicable statutory factors under 18 U.S.C. § 3553(a) and involves no greater deprivation of liberty than is reasonably necessary under those factors.

Accordingly, we **VACATE** the Search Condition and **REMAND** to the district court for further consideration of whether it is necessary to impose the Search Condition in this particular case and, if so, for the district court to explain the individualized basis for imposing the Search Condition.

TIFFANY H. LEE, Assistant United States Attorney, for Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

TIMOTHY P. MURPHY, Assistant Federal Public Defender, Federal Public Defender's Office, Buffalo, NY.

JOSEPH F. BIANCO, *Circuit Judge*:

Defendant-Appellant Alex Oliveras appeals from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*), entered

November 23, 2021, following his guilty plea, sentencing him principally to sixty-three months' imprisonment and a three-year supervised release term for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i). Oliveras's sole contention on appeal is that the imposition of a special condition of supervised release that subjects him to suspicionless searches by a probation officer (the "Search Condition") violates the Fourth Amendment.

We conclude that the "special needs" doctrine of the Fourth Amendment permits, when sufficiently supported by the record, the imposition of a special condition of supervised release that allows the probation officer to conduct a suspicionless search of the defendant's person, property, vehicle, place of residence or any other property under his or her control. However, the district court exceeded its discretion in imposing that special condition here because it failed to make the individualized assessment required to support the special condition under 18 U.S.C. § 3583(d), including a sufficient explanation as to how the condition is reasonably related in this particular case to the applicable statutory

factors under 18 U.S.C. § 3553(a) and involves no greater deprivation of liberty than is reasonably necessary under those factors.

Accordingly, we **VACATE** the Search Condition and **REMAND** to the district court for further consideration of whether it is necessary to impose the Search Condition in this particular case and, if so, for the district court to explain the individualized basis for imposing the Search Condition.

## BACKGROUND

On November 27, 2018, Oliveras was charged in an indictment in the Western District of New York with the following:  two counts of possession of cocaine with intent to distribute in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Counts One and Two); one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) (Count Three); one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four); one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Five); and one count of possession of a defaced firearm in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count Six).

On October 22, 2020, Oliveras pled guilty to Count One (possessing cocaine with intent to distribute) and Count Four (possessing a firearm in furtherance of

4

drug trafficking), pursuant to a plea agreement with the government. On November 23, 2021, the district court sentenced Oliveras principally to sixty-three months' imprisonment and a three-year supervised release term. In connection with the supervised release term, the district court imposed the Search Condition at issue on this appeal, to which Oliveras objected both in writing prior to the sentencing and at the sentencing proceeding.

Prior to Oliveras's sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") in which it recommended a search condition as a special condition of supervised release. The search condition initially provided for searches "based upon reasonable suspicion." *United States v. Oliveras*, No. 18-cr-00234, Dkt. No. 82 at 23 (Initial PSR). The Probation Office subsequently, without explanation, revised the proposed condition to remove the reasonable suspicion requirement. *See Oliveras*, No. 18-cr-00234, Dkt. No. 101 at 24 (First Revised PSR). More specifically, the Search Condition provided:

> The defendant shall submit to a search of his person, property, vehicle, place of residence or any other property under his control, and permit confiscation of any evidence or contraband discovered. (This condition serves the statutory sentencing purposes of

deterrence, public protection, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D)).

*Id.*

Oliveras did not object to the search condition as initially proposed. However, in his sentencing submission, he objected to the Search Condition as revised because it omitted reasonable suspicion as a requirement for any search by the probation officer. *See Oliveras*, No. 18-cr-00234, Dkt. No. 106 at 2 (Statement with Respect to Sentencing Factors).

In response to Oliveras's objection, the Probation Office submitted another revised PSR with an addendum that explained the omission of the reasonable suspicion language from the Search Condition by relying on this Court's decision in *United States v. Braggs*, 5 F.4th 183 (2d Cir. 2021). Specifically, the PSR stated:

> Under the special needs doctrine, a parole officer may search a parolee, without violating the Fourth Amendment, so long as the search is reasonably related to performance of the officer's duties. The duties of a parole officer include the supervision, rehabilitation, and societal reintegration of parolees, as well as assuring that the community is not harmed by parolees being at large. Because a search undertaken by a parole officer of a parolee to detect parole violations is reasonably related to the parole officer's duties, such a search is

permissible under the special needs doctrine and accordingly comports with [the] Fourth Amendment.

*Oliveras*, No. 18-cr-00234, Dkt. No. 109 at 25 (Second Revised PSR) (citing *Braggs*, 5 F.4th at 184).  The Second Revised PSR also relied on this Court's reasoning in *United States v. Grimes*, 225 F.3d 254 (2d Cir. 2000), and stated:

> [W]hile parolees do not surrender their constitutional protection from unreasonable searches and seizures, their status as parolees diminishes the extent of their Fourth Amendment protection. Parolees may be subject to warrantless searches and seizures by a parole officer, as long as the officer's conduct is rationally and reasonably related to the performance of his or her duties.

Second Revised PSR at 25.  The Probation Office noted that both *Braggs* and *Grimes* involved "individuals under a sentence of state parole supervision," but concluded that "the same analysis applies to a defendant who is under a sentence of supervised release, which is the federal counterpart or equivalent of state parole." *Id.* at 25–26.

At sentencing, the district judge rejected Oliveras's objection, imposing the Search Condition as a special condition of his supervised release and declining to add the reasonable suspicion requirement.  In doing so, the district judge

explained that he had a "problem with the reasonable suspicion requirement" given his view regarding the nature of supervised release:

> [W]hen you're on supervised release, that [is] to allow [you] out of prison at an earlier time. And it seems to me that, all of a sudden, you have some legal rights that you would not have when you were in prison, and that is a search of the cell based on reasonable suspicion. They can search a cell any time whenever they feel.

Joint App'x at 100. The district judge stated that he was "open-minded," but that he was "not inclined to put the reasonable suspicion [requirement] in [his] sentences unless somebody can point to [him] a valid reason why in a particular case it should" be included. *Id.* He further clarified:

> So I'm going to not require reasonable suspicion in my sentences. I don't want to say all the time. I always want to keep an open mind . . . . [I]t's my intention that [in] the general case, I will provide [that] reasonable suspicion is not required, but I'll keep an open mind, and I'll note in this case here, I'm not going to require reasonable suspicion. I can tell you up front.

*Id.* at 100-01.

As to the legal basis for the ruling, the district judge, referring to *Braggs*, explained that this Court has "clearly indicated" that reasonable suspicion is not required. *Id.* at 101. Further, the district judge stated that "even before [*Braggs*]," he "was always somewhat surprised in a way that the probation office was

requiring this reasonable suspicion requirement" and that he "just never went along with it." *Id.*

In response, defense counsel attempted to distinguish *Braggs*, pointing out that "*Braggs* involved a defendant who was on New York State Parole . . . . not a defendant who was on federal supervised release." *Id.* Further, defense counsel noted that "there has not been a Second Circuit or a United States Supreme Court decision that has expressly decided that there is anything lower than reasonable suspicion required for the search of a person's home while on federal supervised release." *Id.* The district judge, however, maintained that reasonable suspicion should not be required for a probation officer to search a defendant on supervised release, particularly in this case which involved drugs. The district judge stated his view, based upon past cases, that individuals convicted of drug offenses "often are involved in drugs when they're on supervised release." *Id*. at 102. In addition, the district judge noted that, because "[d]rugs are normally a surreptitious type of thing" and are not "out in the open generally," a probation officer should be able to conduct a search without a showing of reasonable suspicion. *Id.* Accordingly,

9

the district judge adopted the Search Condition as recommended by the Probation Department, which included no requirement of individualized suspicion.

This appeal followed.

## DISCUSSION

This Court generally reviews the imposition of supervised release conditions for abuse of discretion. *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). "When a challenge to a condition of supervised release presents an issue of law, however, we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *Id.* (quoting *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013) (internal quotation marks omitted)). In addition, "[w]here a condition of supervised release implicates a constitutional right, we conduct a more searching review in light of the 'heightened constitutional concerns' presented in such cases." *United States v. Eaglin*, 913 F.3d 88, 95 (2d Cir. 2019) (quoting *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005)).

On appeal, Oliveras challenges the district court's imposition of the Search Condition. He contends that the Search Condition is unconstitutional because suspicionless searches by his probation officer would violate his rights under the

Fourth Amendment. Oliveras also argues that the condition is unreasonable because the district court did not make an individualized assessment for imposing the Search Condition, nor sufficiently state its reasons for doing so.

For the reasons set forth below, we conclude that a suspicionless search condition for an individual on supervised release is permissible under the Fourth Amendment, when supported by the record, because a supervisee has a diminished expectation of privacy and the effective administration of supervised release by a probation officer presents a "special need" that "permit[s] a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (internal quotation marks and citation omitted). However, we also conclude that the district court exceeded its discretion in imposing the Search Condition here because it did not make an individualized assessment as to the need for the imposition of the Special Condition on Oliveras, nor did it sufficiently state its reasons for imposing the condition.

## I.    The Fourth Amendment and Search Conditions

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. In determining whether a search is reasonable,

11

courts must balance "the degree to which [the search] intrudes upon an individual's privacy" with "the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation marks and citation omitted). In doing so, we are required to "examine the totality of the circumstances." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Under this approach, a search generally is "not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619 (1989). However, the "Fourth Amendment protections extend only to 'unreasonable government intrusions into . . . legitimate expectations of privacy.'" *United States v. Thomas*, 729 F.2d 120, 122 (2d Cir. 1984) (quoting *United States v. Chadwick*, 433 U.S. 1, 7 (1977)).

In particular, as relevant here, in *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987), the Supreme Court recognized that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." In assessing whether a special need justifies a search, we have explained that: (1) "the government must allege a special need, the importance of which derives both

from the particular context in which it seeks to implement searches . . . and what the searches are designed to discover"; (2) "those subject to the search must enjoy a diminished expectation of privacy, partly occasioned by the special nature of their situation, and partly derived from the fact that they are notified in advance of the search policy"; and (3) "the search program at issue must seek a minimum of intrusiveness coupled with maximum effectiveness so that the searches bear a close and substantial relationship to the government's special needs." *United States v. Lifshitz*, 369 F.3d 173, 186 (2d Cir. 2004) (internal quotation marks omitted).

Although neither the Supreme Court nor this Court has specifically addressed the constitutionality of a suspicionless search by a probation officer of a defendant on supervised release, we do not analyze this issue on a blank slate. Indeed, over the last several decades, both the Supreme Court and this Court have analyzed the Fourth Amendment standard for searches authorized in connection with individuals under various forms of post-sentence supervision—such as probation, parole, or supervised release. Because this case authority is instructive in analyzing the constitutional issue presented in this appeal, we begin by summarizing the relevant precedent in each category of supervision.

### A.   Probation Supervision

In *United States v. Knights*, 534 U.S. 112, 121–22 (2001), the Supreme Court held that a warrantless search of a probationer's apartment, supported by reasonable suspicion and authorized by a probation condition, was reasonable within the meaning of the Fourth Amendment.  In reaching this decision, the Supreme Court explained:

> Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.  Probation is one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.  Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.  Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.

*Id*. at 119 (internal quotation marks and citations omitted).  The Supreme Court emphasized that "[i]t was reasonable to conclude that the search condition would further the two primary goals of probation—rehabilitation and protecting society from future criminal violations."  *Id*.  The Supreme Court also noted that, "[i]n assessing the governmental interest side of the balance, it must be remembered that the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law."  *Id*. at 120 (internal

14

quotation marks and citation omitted).  Thus, although recognizing "the hope that [the probationer] will successfully complete probation and be integrated back into society," the Supreme Court held "that the balance of these considerations requires no more than reasonable suspicion to conduct a search of [the] probationer's house.  *Id*. at 120–21.  The Supreme Court, however, explicitly left open the question of "whether the probation condition so diminished, or completely eliminated, [the probationer's] reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer *without any individualized suspicion* would have satisfied the reasonableness requirement of the Fourth Amendment."  *Id*. at 120 n.6 (emphasis added) (citation omitted).

B.    **Parole Supervision**

In *Samson v. California*, the Supreme Court answered, in the context of a parolee, the question left open in *Knights* and held that suspicionless searches of a parolee do not violate the Fourth Amendment.  547 U.S. at 857.  In that case, a police officer searched a parolee—pursuant to a California statute that requires every prisoner eligible for release on state parole to "agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause"—and found

15

contraband. *Id.* at 846–47 (citation omitted). The Supreme Court reviewed the totality of the circumstances pertaining to the petitioner's status as a parolee, including his acceptance of the clear and unambiguous search condition, and concluded that he "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. With respect to his status of a parolee, and the diminished expectation of privacy resulting therefrom, the Supreme Court explained:

> As we noted in *Knights*, parolees are on the continuum of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, parole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.

*Id*. at 850 (internal quotation marks and citations omitted). In this context, the Supreme Court emphasized that "California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." *Id*. at 854. Pursuant to that state interest, the Supreme Court "conclude[d] that the

16

Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id*. at 857.

We likewise addressed the scope of suspicionless searches in the context of parolees in *United States v. Braggs*, 5 F.4th 183 (2d Cir. 2021). Although noting that the search at issue was conducted by parole officers rather than by municipal police officers as in *Samson*, we concluded that the suspicionless search did not violate the Fourth Amendment, under the special needs doctrine, when New York state parole officers were performing a search reasonably related to their duties. *Id*. at 187–88. In *Braggs*, the government appealed from the district court's decision suppressing evidence gathered in connection with a parole search of the defendant's house. *Id.* at 184. The government conceded that it lacked reasonable suspicion, but argued that special needs still permitted the search. *Id*. On appeal, this Court agreed and reasoned that "in light of [] special needs" such as "a [s]tate's operation of a probation system," "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *Id*. at 186–87 (alterations adopted) (internal quotation marks and citations omitted). "Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that the community is not harmed by the parolee's being at large." *Id*.

at 187 (alterations adopted) (internal quotation marks and citations omitted).

Thus, because the parole officers' search for a gun in the parolee's home was

reasonably related to those duties, we held that "the district court erred in holding

that reasonable suspicion was required in this context." *Id*. at 188.

## C. Supervised Release

Although the Supreme Court has not addressed suspicionless searches in

the context of a defendant on supervised release, this Court has explored that issue

in certain contexts. For example, in *United States v. Reyes*, 283 F.3d 446, 462 (2d Cir.

2002), we held that a suspicionless visit to the home of a defendant serving a term

of supervised release did not violate the Fourth Amendment. In doing so, we

explained that the diminished Fourth Amendment rights of parolees "appl[y] with

equal force to individuals, like Reyes, subject to federal supervised release—the

reformed successor to federal parole." *Id*. at 458. Moreover, we described in detail

the role of the probation officer and emphasized:

> In the same way that a parole officer, of necessity, must have
> investigative powers to gather information about the parolee's
> activities, environment, and social contacts so as to ensure that the
> conditions of parole are not being violated and to monitor the
> parolee's progress of reintegration into society, field contacts with a
> convicted person serving a term of federal supervised release are vital
> to ensure that the probation officer is aware of the offender's conduct
> and condition.

18

*Id*. at 458 (alterations adopted) (internal quotation marks and citations omitted). Thus, we held, under the special needs doctrine, that probation officers could conduct "at any time" a home visit to determine whether the supervisee was violating the terms of his supervised release, without any individualized suspicion. *Id*. at 459–61.

In *United States v. Balon*, 384 F.3d 38, 43–44 (2d Cir. 2004), we again discussed the Fourth Amendment standard for defendants on supervised release in connection with a challenge to a search condition allowing for remote monitoring of a defendant's computer. *Balon* involved a defendant who was convicted of transporting child pornography in interstate commerce through the use of a computer, and, in addition to being sentenced to prison term, was subjected to conditions of supervised release, including the Probation Department's remote monitoring of his use of computers. *Id*. at 41. In articulating the standard for the defendant's Fourth Amendment challenge to that condition of supervised release, we identified the first part of the inquiry as requiring a determination as to "whether a convicted person serving a term of federal supervised release[] has a legitimate expectation of privacy." *Id.* at 44 (internal quotation marks, alteration, and citation omitted). We then reiterated that "[a]n offender on supervised release

19

has a 'diminished expectation of privacy that is inherent in the very term "supervised release."'" *Id*. (quoting *Reyes*, 283 F.3d at 460) (emphasis omitted); *see also United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) (noting that supervisees "who sign waivers manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy" (alteration adopted) (quoting *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004))).[1]

---

[1] In support of this conclusion, we suggested in *Balon* that "on the continuum of supervised release, parole and probation, restrictions imposed by supervised release are '[t]he most severe.'" 384 F.3d at 44 (quoting *Lifshitz*, 369 F.3d at 181 n.4). We note that this suggestion in *Balon* and *Lifshitz* may be a misreading of *Reyes*, which *Lifshitz* cites for this proposition. *See Lifshitz*, 369 F.3d at 181 n.4 ("The most severe [among supervised release, parole, and probation] is 'supervised release,' which is 'meted out in addition to, not in lieu of, incarceration' . . . ." (quoting *Reyes*, 283 F.3d at 461)). *Reyes* did state that the principles supporting the special needs doctrine in the context of probation "apply *a fortiori* to federal supervised release, which, in contrast to probation, is meted out in addition to, not in lieu of, incarceration." 283 F.3d at 461 (internal quotation marks and citation omitted). However, while it suggested that the grounds for the special needs doctrine were even stronger for individuals on supervised release as compared to probation, we do not read *Reyes* to suggest that the restrictions imposed by supervised release are more severe than parole. Indeed, Oliveras asserts that parole is the most severe on the continuum of forms of post-release supervision because "parole is a constructive extension of a prison sentence" while "supervised release is imposed *in addition* to prison, not as an *alternative* to it." Appellant's Br. at 14. In any event, even if we accept that construction for purposes of our analysis (notwithstanding the language in *Balon* and *Lifshitz*), we still conclude, as articulated in *Reyes*, that the governmental interests supporting suspicionless searches of parolees apply with "equal force" to supervisees, *see* 283 F.3d at 458, and, as discussed *infra*, support the constitutionality of such searches in the supervised release context.

We further emphasized that "when evaluating conditions of supervised release under the Fourth Amendment we remain mindful that the alternative facing defendants on supervised release in the absence of a computer monitoring probation condition might well be the more extreme deprivation of privacy wrought by imprisonment." *Balon*, 384 F.3d at 44 (alterations adopted) (internal quotation marks and citation omitted). Thus, we concluded that "[the supervisee's] expectation of privacy is subject to the special needs of supervised release," which we then summarized:

> A number of these special needs are set out in Sections 3583(d) and 3553(a), and provide that conditions reasonably relating to the nature and circumstances of the offense and the history and characteristics of the defendant must: (i) "afford adequate deterrence to criminal conduct"; (ii) "protect the public from further crimes of the defendant"; and (iii) "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a) (cited in 18 U.S.C. § 3583(d)). These statutes also require that the conditions "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve "the[se] purposes." *Id.* § 3583(d)(2).

*Id*. at 44–45.[2]

---

[2] We also note that the policy statement in the Sentencing Guidelines recommends including certain special conditions of supervised release in cases involving sex offenses, including a condition that allows a search by a probation officer, without reasonable suspicion, "in the lawful discharge of the officer's supervision functions." U.S.S.G. § 5D1.3(d)(7)(C); *see also United States v. Parisi*, 821 F.3d 343, 348 (2d Cir. 2016) (per curiam).

We then explained that "[b]ecause of these special needs, the requirements of effective special conditions define the parameters of a supervised releasee's Fourth Amendment rights." *Id.* at 45. We acknowledged, however, that "the efficacy of special conditions with respect to computer monitoring, and therefore the extent to which they must intrude upon a supervised releasee's privacy in light of the special needs of supervised release, is fundamentally a question of technology." *Id*. Because the technology at issue is "constantly and rapidly changing" and "Balon [would] not begin his term of supervised release for three years," we concluded that "it [would be] impossible to evaluate at th[at] time whether one method or another, or a combination of methods, [would] occasion a greater deprivation of his liberty than necessary in light of the special needs of supervised release." *Id*. at 46. We thus dismissed that Fourth Amendment challenge as unripe for review and directed the district court to reconsider this issue, at the request of either party, at a time closer to Balon's release to supervision. *Id*.

## II.   Suspicionless Search for Defendants on Supervised Release

Oliveras argues that the Special Condition violates the Fourth Amendment because it requires him to submit to searches by the probation officer without

22

reasonable suspicion, which infringes on his constitutional right to privacy. We find this argument, stated so broadly, unpersuasive.

As we recognized in *Reyes*, Oliveras has a diminished expectation of privacy during his period of supervision because he is a "convicted person serving a court-imposed term of federal supervised release." 283 F.3d at 457; *see also Mont v. United States*, 139 S. Ct. 1826, 1833 (2019) ("Supervised release is a form of postconfinement monitoring that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison." (internal quotation marks and citation omitted)); *United States v. Peguero*, 34 F.4th 143, 160-61 (2d Cir. 2022) ("[P]recedent and logic make clear that a term of supervised release is imposed as part and parcel of the original sentence—an inextricable part of the penalty for the initial offense." (internal quotation marks and citation omitted)); *United States v. Harper*, 805 F.3d 818, 822 (7th Cir. 2015) ("[P]rison and supervised release can be substitutes as well as complements, since, realistically, supervised release is a form of custody (like parole, which it largely replaced in the federal system of criminal justice) because it can and often does impose severe limitations on a defendant's post-release liberty." (internal quotation marks and citation omitted)); *see generally United States v. Leon*, 663 F.3d 552, 556 (2d Cir. 2011)

23

("District courts are permitted . . . to hedge against a relatively lenient term of imprisonment by imposing a longer term of supervised release." (alterations adopted) (internal quotation marks and citation omitted)).

Moreover, Oliveras would be fully aware that he is subject to the Search Condition during his release, and thus would "[know] that his expectation of privacy [is] diminished by virtue of his status as a convicted person serving a term of federal supervised release." *Reyes*, 283 F.3d at 460; *see also Peguero*, 34 F. 4th at 161 ("[E]ven though supervised release fulfills rehabilitative ends, distinct from those served by incarceration, it is still, like probation or parole, a grant of leniency based on a defendant's promise to follow certain conditions." (internal quotation marks and citation omitted)).

Balanced against his diminished expectation of privacy, the government's interest in proper and effective supervision of individuals on supervised release is substantial. The Supreme Court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853. Thus, in *Samson*, the Supreme Court held that a state's "ability to

24

conduct suspicionless searches of parolees serves its interest in reducing recidivism" and that a suspicionless search by a law enforcement officer of a parolee was not a violation of the Fourth Amendment. *Id.* at 854, 857. That same governmental interest in "supervision, rehabilitation, and societal reintegration" supports a suspicionless search of an individual by his probation officer under the special needs doctrine during a term of supervised release because such a search is "reasonably related to the [probation] officer's duties." *See Braggs*, 5 F.4th at 187–88.

To the extent that Oliveras argues that his status on supervised release increases his expectation of privacy and/or reduces the government's interests in this context when compared to a parolee, such that a suspicionless search cannot be tolerated by the Fourth Amendment, we are unpersuaded. In rejecting this argument, we rely on our analysis in *Reyes*, which thoroughly explained why the government's compelling interests in effective supervision during parole are not diminished simply because an individual is on supervised release.

To be sure, we recognized that, while both forms of supervision follow incarceration, supervised release "differs from parole in an important respect: unlike parole, supervised release does not replace a part of the term of

incarceration, but instead is given *in addition to* any term of imprisonment imposed by a court."[3] *Reyes*, 283 F.3d at 458. Notwithstanding that important distinction, we concluded that the government's "special need" to enforce conditions of supervision imposed on individuals on supervised release is comparable to its need to enforce such conditions over those on parole and justified a suspicionless home visit:

> One of the principal purposes of a probation/parole officer's observation and supervision responsibilities is to ensure that a convicted person under supervision does not again commit a crime. We have long recognized a duty on the part of the parole officer to investigate whether a parolee is violating the conditions of his parole—one of which, of course, is that the parolee commit no further crimes—when the possibility of violation is brought to the officer's attention. Federal probation officers overseeing convicted persons serving terms of federal supervised release are similarly charged with monitoring supervisees' adherence to the conditions of their release— which, as in the case of parole, includes the requirement that supervisees not commit further crimes. Accordingly, because probation officers monitoring convicted persons on supervised release bear the same supervisory responsibility as when acting as parole officers, we conclude that probation officers are required to investigate the conduct and condition of a supervisee by, *inter alia*, undertaking "at any time" a home visit to determine whether the supervisee is violating the terms of his supervised release, including the condition that he not commit any further crimes.

---

[3] Thus, the district court erred to the extent it suggested that supervised release shortens a term of imprisonment. *See* Joint App'x at 100 ("when you're on supervised release, that was to allow someone out of prison at an earlier time"). As *Reyes* explains, supervised release follows a term of imprisonment, while parole conditionally shortens a term of imprisonment. *See Reyes*, 283 F.3d at 458.

*Id*. at 459–60 (internal quotation marks, citations, and footnotes omitted).[4]

In short, recognizing as we did in *Reyes* the diminished expectation of privacy of supervisees, and the special needs of probation officers to fulfill their supervisory roles in that capacity, we hold that the imposition of a special condition of supervised release that allows for searches without individualized suspicion does not violate the Fourth Amendment and, thus, can be imposed if sufficiently supported by the record under the factors set forth in Section 3583(d). Such a condition gives probation officers the "considerable investigative leeway" they need to monitor an individual on supervised release, such that they can act as the "eyes and ears" for the court. *Reyes*, 283 F.3d at 455, 457 (internal quotation

---

[4] In contexts other than search conditions, the Supreme Court has expressed a variety of views on the extent to which supervised release is similar to or different from traditional parole. *See United States v. Haymond*, 139 S. Ct. 2369, 2382 (2019) (plurality opinion) ("[U]nlike parole, supervised release wasn't introduced to replace a portion of the defendant's prison term, only to encourage rehabilitation *after* the completion of his prison term. . . . [T]hat structural difference bears constitutional consequences." (internal quotation marks omitted)); *id*. at 2385 (Breyer, J., concurring in judgment) ("[T]he role of the judge in a supervised-release proceeding is consistent with traditional parole."); *id*. at 2388 (Alito, J., dissenting) (Although "parole relieved a prisoner from serving part of the prison sentence originally imposed, whereas a term of supervised release is added to the term of imprisonment specified by the sentencing judge[,] . . . this difference is purely formal and should have no constitutional consequences."); *Mont*, 139 S. Ct. at 1833–34 (five-justice majority describing supervised release as both "a form of punishment" and "a form of postconfinement monitoring that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison" (internal quotation marks and citation omitted)).

marks and citations omitted). In other words, the special condition allows probation officers "to determine whether the supervisee is violating the terms of his supervised release, including the condition that he not commit any further crimes." *Id*. at 460.

Our sister circuits who have addressed this issue have reached the same conclusion under analogous circumstances. For example, in *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007), the Ninth Circuit upheld a condition of supervised release that provided that "the defendant shall submit person and property to search and seizure at any time of the day or night by any law enforcement officer, with or without a warrant."[5] In finding no abuse of discretion in imposing that "very intrusive" condition, the Ninth Circuit relied heavily on the Supreme Court's decision in *Samson*:

> [T]he Supreme Court recently held in *Samson v. California*, that a similarly worded condition imposed by statute on all California parolees did not violate the Fourth Amendment, even though the condition did not require reasonable suspicion. The Court considered the high risk of recidivism for people convicted of crimes, and the problem that "[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality." Because the blanket requirement imposed by

---

[5] Because the Special Condition here allowed suspicionless searches only by probation officers, we do not reach the question of whether law enforcement officers other than the probation officer(s) conducting the supervision may conduct such searches pursuant to the special condition.

California on state parolees did not violate the Fourth Amendment, *a fortiori* the individualized requirement imposed in this case on supervised release does not. There is no sound reason for distinguishing parole from supervised release with respect to this condition. The federal system has abolished parole, and uses supervised release to supervise felons after they get out of prison. People on supervised release have not completed their sentences, they are serving them. The Court in *Samson* itself drew the analogy to supervised release. After *Samson*, there is no room for treating the search condition in this case as an abuse of discretion.

*Id*. (footnotes omitted) (quoting *Samson*, 547 U.S. at 854–55).

Similarly, in *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007), the Tenth Circuit upheld a special condition of supervised release, for a defendant convicted of unlawfully possessing a firearm, that required the defendant to "submit to a search of his person, property, or automobile under his control" without any level of suspicion. The court noted that "one effective means of preventing [the defendant] from committing a similar offense in the future is to require him to submit to suspicionless searches after he has been released from prison but while he is still under the supervision of the Probation Officer." *Id*. The court further explained that "[s]earches based on some particularized level of suspicion, by way of contrast, would likely not be as effective at deterring future crimes of possession since the defendant could easily conceal such wrongdoing." *Id*. It therefore held that the district court acted within its discretion in imposing

29

the suspicionless search condition. *Id.*; *see also United States v. Sulik*, 807 F. App'x 489, 493 (6th Cir. 2020) (summary order) (concluding that "the current legal landscape forecloses any claim that a suspicionless-search condition for individuals on supervised release 'plainly' violates the Fourth Amendment"); *United States v. Oswald*, 711 F. App'x 593, 594–95 (11th Cir. 2018) (summary order) (holding no plain error in imposition of suspicionless search condition of supervised release); *United States v. Erwin*, 675 F. App'x 471, 472 (5th Cir. 2017) (summary order) (same); *United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017) (upholding suspicionless search of cell phone of defendant on supervised release at a residential correctional facility). [6]

---

[6]  Other courts, with respect to probation supervision, have likewise found that a condition allowing for a suspicionless search of a probationer's residence does not violate the Fourth Amendment. *See, e.g.*, *United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016) (holding that a condition to search probationer's person, vehicle, property or place of residence without suspicion did not violate the Fourth Amendment); *United States v. King*, 736 F.3d 805, 806 (9th Cir. 2013) (holding that suspicionless search of probationer's residence is permissible under the Fourth Amendment "when, as here, a violent felon has accepted a suspicion-less search condition as part of a probation agreement"); *Owens v. Kelley*, 681 F.2d 1362, 1368 (11th Cir. 1982) (holding that suspicionless search of probationer's residence is permissible under the Fourth Amendment because "[i]t is clear that a requirement that searches only be conducted when officers have 'reasonable suspicion' or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the [deterrence] purpose of the search condition"). We have no occasion here to address the constitutionality of suspicionless searches of probationers.

In sum, we conclude that the special needs doctrine of the Fourth Amendment permits, when sufficiently supported by the record, the imposition of a special condition of supervised release by the district court that allows the probation officer conducting the supervision to search the defendant's person, property, vehicle, place of residence, or any other property under his control, without any level of suspicion.

## III.   Procedural Reasonableness of the Search Condition in this Case

Oliveras alternatively argues that the imposition of the Search Condition was procedurally unreasonable in this case because the district court did not make an individualized assessment as to the need to impose the condition, nor sufficiently state its reasons as to why the imposition of the condition in this case was reasonably related to the relevant sentence factors under Section 3553(a).  We agree.

"For a sentence to be procedurally reasonable, a [d]istrict [c]ourt must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it.'"  *Eaglin*, 913 F.3d at 94 (2d Cir. 2019) (quoting *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018)).  "In the absence of such an explanation, we may uphold

31

the condition imposed only if the district court's reasoning is 'self-evident in the record.'" *Betts*, 886 F.3d at 202 (quoting *Balon*, 384 F.3d at 41 n.1).

In imposing conditions of supervised release, district courts possess broad discretion. *United States v. Myers*, 426 F.3d 117, 124 (2d Cir. 2005). The district court may impose a special condition of supervised release that is "reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 5D1.3(b); *accord* 18 U.S.C. §§ 3583(d)(1), 3553(a); *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006). Notwithstanding the use of the conjunctive in the Guidelines, "a condition may be imposed if it is reasonably related to any one or more of the specified factors." *United States v. Amer*, 110 F.3d 873, 883 (2d Cir. 1997) (internal quotation marks and citation omitted). Moreover, a special condition must involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of sentencing, and it must be "consistent with any pertinent policy statements issued by the

Sentencing Commission." 18 U.S.C. § 3583(d)(2), (3); *see also* U.S.S.G. § 5D1.3(b); *accord Balon*, 384 F.3d at 42. Importantly, a district court's discretion to impose special conditions is not "untrammelled," and we will "carefully scrutinize unusual and severe conditions." *Myers*, 426 F.3d at 124 (internal quotation marks and citations omitted).

Here, the district court failed to make an individualized assessment to support the imposition of the suspicionless Search Condition as to Oliveras. Indeed, the district court made clear that it was *not* making an individualized assessment as to the need to impose the condition on Oliveras when it stated that it was "not inclined to put the reasonable suspicion requirement in [its] sentences unless somebody can point to . . . a valid reason why in a particular case it should," and thus, in "the general case, [the district court] will provide reasonable suspicion is not required." Joint App'x at 100. Rather than making an individualized assessment at the start, the district court espoused the presumptive application of the Search Condition in drug cases, relying on broad statements about its views regarding supervision in drug cases generally, untethered to any specific consideration to the facts and circumstances in this particular case. For example, the district court justified the Search Condition with its observation that

individuals convicted of drug offenses tended to reoffend while on supervised release. Additionally, the district court reasoned that, because offenders do not leave drugs out in the open, probation officers should be afforded the ability to conduct searches without a showing of reasonable suspicion. The district court also stated that, given the high risk of recidivism in drug cases, requiring reasonable suspicion would undermine the needs of the probation officer to supervise those particular offenders on release.

We recognize that the district court generally expressed some valid reasons as to why a suspicionless search *could* be reasonably related to the relevant factors, under Section 3553(a), in cases involving drug offenses. However, exclusive reliance on those generalized considerations is inconsistent with the requirement that the district court make an "individualized assessment" as to each defendant when determining whether to impose a special condition. *Eaglin*, 913 F.3d at 94 (internal quotation marks and citation omitted); *see also United States v. Arbaugh*, 951 F.3d 167, 179 (4th Cir. 2020) ("[T]he district court cannot fulfill its duty by generally referring to the legal standards in § 3553(a) and § 3583(d), which govern how the court should exercise its discretion in imposing any special conditions of release. Instead, the district court had to explain what facts led to its decision to

34

impose the computer-related special conditions[, which permitted random inspections of defendant's personal computing devices,] *on this defendant*." (emphasis added)); *cf. United States v. Germosen*, 139 F.3d 120, 131–32 (2d Cir. 1998) (upholding search condition permitting searches of defendant's person and property "necessary to secure financial information" in a fraud case involving restitution order, where the district court's "reasoning behind the condition, as with her reasoning behind other aspects of [the defendant's] sentence, was made clear during the sentencing hearing"); *United States v. Winston*, 850 F.3d 377, 380–81 (8th Cir. 2017) (holding district court did not commit plain error in imposing reasonable suspicion based search condition on a narcotics offender where the probation officer's motion and the court's statement at sentencing explained the need for the condition); *United States v. Monteiro*, 270 F.3d 465, 469 (7th Cir. 2001) (upholding search condition requiring defendant to submit to search "upon demand" in a fraud case where, "[i]n imposing the special condition . . . , the district court explained that [the defendant's] history of fraudulent endeavors demonstrated the need for 'exceptional vigilance' on the part of law enforcement officials to discourage recidivism").

The district court's responsibility to conduct an individualized assessment is not suspended in drug cases, nor is it permissible to have a presumption that a suspicionless search condition is warranted in every drug case unless a defendant can demonstrate otherwise. Indeed, it is not difficult to imagine individualized cases where, although a defendant was convicted of a drug offense, the nature of his involvement in that offense, combined with an assessment of the other applicable statutory factors, would not support a finding that such a highly intrusive suspicionless search condition is reasonable. Therefore, any decision by a district court to this or any other special condition must be supported, including in drug cases, by an individualized assessment and explanation as to why that condition is "reasonably related" to the sentencing objectives and "involve[s] no greater deprivation of liberty than is reasonably necessary" for these purposes. U.S.S.G. § 5D1.3(b); *see also Eaglin*, 913 F.3d at 100 (emphasizing that "[b]efore imposing a special condition . . . , a district court must make factual findings supporting its view that the condition is designed to address a realistic danger and the deprivation the condition creates is not greater than reasonably necessary to serve the sentencing factors").

Moreover, while we agree with the government that a condition of supervised release permitting suspicionless searches does not per se violate the Fourth Amendment, and may in appropriate cases be supported by the special needs of supervision, it does not follow that such a condition may be imposed as a routine matter. As with other conditions of supervised release that implicate constitutionally protected interests, such a broad authorization to conduct unlimited searches must be carefully considered by sentencing courts "and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *United States v. Matta*, 777 F.3d 116, 123 (2d Cir. 2015) (internal quotation marks and citations omitted).

In *Reyes*, our approval of the condition authorizing suspicionless home visits rested, in part, on the recognition that "a home visit is far less intrusive than a [full-scale] probation search," 283 F.3d at 462 (emphasis omitted), and we have heretofore approved conditions permitting searches of a supervisee's home only upon reasonable suspicion. As we have repeatedly explained in affirming such search conditions, those conditions do not constitute a greater deprivation than

reasonably necessary *because* they require reasonable suspicion.[7] The requirement of reasonable suspicion does not set a high bar, and the government cites no empirical evidence that the ordinary practice of courts within this Circuit of imposing search conditions based on reasonable suspicion has failed to satisfy the Probation Department's "special needs" of supervision in the vast majority of cases, such that suspicionless search conditions are required. Permitting such highly intrusive, full-scale searches for no particular reason, without limitation as to frequency or scope, subjects the supervisee to the prospect of frequent, unlimited searches without any factual precondition. Such conditions may be justified, but they require careful consideration as to the need for such broad discretion to search in each particular case.[8]

---

[7] *See United States v. Stiteler*, No. 22-2732, 2023 WL 4004573, at *1 (2d Cir. June 15, 2023) (summary order) (finding that the district court did not abuse its discretion in "finding that the search condition [did] not depriv[e] [the defendant] of liberty greater than necessary because it requires . . . reasonable suspicion before the search can be conducted." (internal quotation marks and citation omitted)); *United States v. Rakhmatov*, No. 21-151, 2022 WL 16984536, at *3 (2d Cir. Nov. 17, 2022) (summary order) (explaining that the "condition's limitations on searches to circumstances in which reasonable suspicion of a supervised release violation exists and to a reasonable time and manner of search ensure that the condition imposes no greater restraint on liberty than is reasonably necessary" (alterations adopted) (internal quotation marks and citation omitted)).

[8] As we have long acknowledged, "searching for illegal drug use" is a "particularly apt analogy to monitoring for computer-related sex offenses." *Lifshitz*, 369 F.3d at 189. In light of the constitutional rights implicated by conditions of supervised release

Accordingly, we conclude that the district court committed procedural error, and therefore exceeded the scope of its discretion, because it did not make an individualized assessment in deciding whether to impose the Search Condition or provide adequate reasons for us to decide whether the Search Condition is reasonable under Section 3583(d), including a sufficient explanation as to how the condition is reasonably related in this particular case to the applicable statutory factors under Section 3553(a).[9]

---

permitting monitoring of computer devices or restricting access to the internet, we have repeatedly emphasized that such conditions must be "narrowly tailored" and "robustly supported" by a district court. *Eaglin*, 913 F.3d at 91, 98. Thus, we have not hesitated to remand monitoring conditions where a less intrusive condition appeared to be a "viable option" and the record "d[id] not explain why such [an alternative condition] was insufficient." *Id*. at 98; s*ee also United States v. Salazar*, No. 22-1385, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (summary order) (vacating monitoring condition authorizing suspicionless search of defendant's internet-capable devices, where "narrower options were available to the district court" and there was "no indication that the district considered such a [narrower] condition" or "explan[ation] why a more stringent condition was necessary").

[9] We recognize that, even in the absence of an explanation, we can uphold the Search Condition "if the district court's reasoning is 'self-evident in the record,'" *Betts*, 886 F.3d at 202 (quoting *Balon*, 384 F.3d at 41 n.1), and the record here does indicate that drugs and a firearm were seized from a residence in Buffalo attributed to Oliveras. However, that seizure occurred more than three years prior to his sentence and it is self-evident, based upon the discussion at sentencing, that the district court's reasoning did *not* contain the requisite individualized assessment of Oliveras at the time of sentencing as it relates to the Special Condition. Thus, under the circumstances, we conclude that a remand is necessary for the district court to make that individualized assessment after the parties have had an opportunity to present any relevant information on this issue that could bear on the applicable statutory factors.

## CONCLUSION

For the reasons set forth above, we **VACATE** the Search Condition and **REMAND** to the district court for further consideration of whether it is necessary to impose the Search Condition in this particular case and, if so, for the district court to explain the individualized basis for imposing the Search Condition.