United States v. Poole

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
No. 24-1201

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ISAAC POOLE,
*Defendant-Appellant.*

On Appeal from a Judgment of the United States District Court for
the Northern District of New York.

SUBMITTED: JANUARY 17, 2025
DECIDED: APRIL 7, 2025

Before: LIVINGSTON, *Chief Judge*, NARDINI and MENASHI, *Circuit
Judges*.

While Defendant-Appellant Isaac Poole was on supervised
release following his conviction for drug offenses, he tested positive
for cocaine, and probation officers found drugs and drug

paraphernalia in his home. The United States District Court for the Northern District of New York (Brenda K. Sannes, *Chief Judge*) revoked Poole's term of supervised release and sentenced him to eight months of imprisonment followed by ninety-six months of supervised release. As a condition of his supervised release, the district court required Poole to submit to suspicionless searches by probation officers or law enforcement officers assisting them. On appeal, Poole argues that the search condition is unsupported by the record and involves a greater deprivation of liberty than is reasonably necessary. We disagree and therefore AFFIRM the judgment of the district court.

---

Thomas R. Sutcliffe, Assistant United States Attorney, *for* John A. Sarcone, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

Melissa A. Tuohey, Assistant Federal Public Defender, Office of the Federal Public Defender, Syracuse, NY, *for Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

This appeal calls for application of our Court's recent holding that a sentencing court may constitutionally subject a defendant to suspicionless searches as a condition of supervised release if that condition is sufficiently supported by the record. *United States v. Oliveras*, 96 F.4th 298, 311 (2d Cir. 2024).

Defendant-Appellant Isaac Poole was on supervised release following his conviction for drug offenses when probation officers found drugs and drug paraphernalia in his home. Poole's supervised release conditions had already been modified once, after he tested positive for cocaine. The United States District Court for the Northern District of New York (Brenda K. Sannes, *Chief Judge*) revoked Poole's supervised release and sentenced him to eight months of imprisonment followed by ninety-six months of supervised release. As a condition of supervised release, the district court required Poole to submit to suspicionless searches by probation officers or law enforcement officers assisting them. Poole now challenges that condition on appeal. Given Poole's pattern of illegal drug activity, including while on supervised release, we conclude that the district court acted well within its discretion in imposing a suspicionless search condition in this case. We therefore AFFIRM the judgment of the district court.

## I.    Background

On August 27, 2012, Poole pleaded guilty in the United States District Court for the District of South Carolina to two counts of possession with intent to distribute, and distribution of, a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Poole's charges stemmed from his sales of crack cocaine, including while he was on state probation for other felony drug charges. The district court (David C. Norton, *District Judge*) sentenced Poole to 156 months of imprisonment, followed by eight years of supervised release.

3

On February 6, 2023, after his release from prison, Poole began serving his term of supervised release in Syracuse, New York, where he was born and lived for part of his childhood before moving to South Carolina. On May 23, 2023, Poole was tested for cocaine and returned a presumptive positive result. He initially denied any drug use, and his urine sample was sent to a lab for confirmation. After the sample was confirmed positive, Poole admitted to using cocaine. With Poole's consent, the district court modified his supervised release conditions to require him to complete community service and submit to searches "with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct." App'x at 31–34. On July 12, 2023, the District of South Carolina transferred jurisdiction over Poole's supervision to the Northern District of New York.

In April 2024, the Probation Department sought revocation of Poole's term of supervised release, alleging that he had violated his release conditions by: (1) unlawfully possessing a controlled substance; (2) committing a state criminal offense by criminally using drug paraphernalia; and (3) unlawfully using a controlled substance. With respect to the first two violations, the probation officer explained that after receiving information from a source that Poole was selling drugs in the community, probation officers visited his home to conduct a "routine home contact" and saw what appeared to be synthetic marijuana. App'x at 55. They returned to Poole's home later that same day with supervisory approval to conduct a search, which turned up cocaine, two scales, baggies, hypodermic needles,

4

and Narcan. The third alleged violation was based on Poole's positive drug test in May 2023.

At a final revocation hearing on April 26, 2024, Poole admitted to the first and third violations—that is, possessing and using illegal drugs.[1] As a result of his violations, the district court revoked Poole's supervised release and sentenced him to eight months of imprisonment followed by ninety-six months of supervised release. As relevant here, the district court imposed the following supervised release condition over Poole's objection:

> [Y]ou must submit your person and any property, house, residence, vehicle, papers, effects, computer, electronic communication devices, and any data storage devices or media to search at any time, with or without a warrant, by any federal probation officer, or any law enforcement officer from whom the probation office has requested assistance, concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the probation office or to the office of their designee for a more thorough examination.

App'x at 79–80.

The district court acknowledged that the suspicionless search condition is "highly intrusive" and that it may be imposed only if it is "based upon an individual assessment" and "supported by specific

---

[1] The district court granted the government's motion to dismiss the second violation.

reasons." *Id.* at 78. But, referencing our recent decision in *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024), the district court found the condition to be appropriate in this case based on Poole's positive cocaine test and possession of drugs and drug paraphernalia while on supervised release. App'x at 78–79. The district court also discussed the offense conduct underlying Poole's conviction, which involved selling cocaine while on state probation. *Id.* at 79. The district court concluded that the search condition would "serve[] the statutory sentencing purposes of deterrence, public protection, and rehabilitation" and "enable the probation officer to satisfy the statutory requirements to keep informed as to [Poole's] conduct and condition, to report [Poole's] conduct and condition to [the district court], and to aid [Poole] and bring about . . . improvements to his conduct and condition." *Id.*

On April 29, 2024, the district court entered its written revocation judgment, which included the search condition as it was set forth on the record at the revocation hearing. Poole now appeals, challenging only the validity of the suspicionless search condition.

## II.  Discussion

We generally review the imposition of supervised release conditions for abuse of discretion. *Oliveras*, 96 F.4th at 304. When, however, "a condition of supervised release implicates a constitutional right, we conduct a more searching review in light of the heightened constitutional concerns presented in such cases." *Id.* (internal quotation marks omitted).

6

In accordance with 18 U.S.C. §§ 3553(a) and 3583(d), the United States Sentencing Guidelines provide that a district court may impose "discretionary" supervised release conditions to the extent they:

> (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D1.3(b). "Notwithstanding the use of the conjunctive in the Guidelines, a condition may be imposed if it is reasonably related to any one or more of the specified factors." *Oliveras*, 96 F.4th at 314 (internal quotation marks omitted).

"District courts possess broad discretion in imposing conditions of supervised release." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). This discretion, however, is not "untrammeled," and "we will carefully scrutinize unusual and severe conditions." *Id.* (internal quotation marks omitted). The imposition of supervised release conditions, like other sentencing decisions, must be procedurally and substantively reasonable. *United States v. Eaglin*, 913

F.3d 88, 94 (2d Cir. 2019). In general, "[t]he procedural inquiry looks to whether the sentencing judge has properly accounted for the factors that constrain its sentencing discretion." *United States v. Kunz*, 68 F.4th 748, 759 (2d Cir. 2023). Our procedural inquiry focuses on whether the district court has made "an individualized assessment when determining whether to impose a special condition of supervised release" and "state[d] on the record the reason for imposing [the condition]." *Eaglin*, 913 F.3d at 94 (quoting *Betts*, 886 F.3d at 202). Absent such an explanation, "we may uphold the condition imposed only if the district court's reasoning is self-evident in the record." *Betts*, 886 F.3d at 202 (internal quotation marks omitted). Substantive reasonableness examines whether, after accounting for the factors that constrain the district court's discretion, the imposition of the supervised release condition "can be located within the range of permissible decisions." *Kunz*, 68 F.4th at 759 (internal quotations marks omitted).

In *Oliveras*, we explained that a "convicted person serving a court-imposed term of federal supervised release" has "a diminished expectation of privacy during his period of supervision." 96 F.4th at 309 (internal quotation marks omitted). Recognizing this diminished privacy expectation, as well as "the special needs of probation officers to fulfill their supervisory roles," we held that "the Fourth Amendment permits, when sufficiently supported by the record, the imposition of a special condition of supervised release by the district court that allows the probation officer conducting the supervision to search the defendant's person, property, vehicle, place of residence,

8

or any other property under his control, without any level of suspicion." *Id.* at 311–13. In other words, a district court may impose "a special condition of supervised release that allows for searches without individualized suspicion" if the condition is "sufficiently supported by the record under the factors set forth in Section 3583(d)." *Id.* at 311.

Here, the record amply supports the district court's imposition of the suspicionless search condition. As the district court explained at the revocation hearing, the offense conduct underlying Poole's conviction involved selling cocaine while on state probation; then, while on supervised release, Poole tested positive for cocaine and was found to be in possession of drugs and drug paraphernalia. App'x at 79. Under the circumstances, the district court found that the search condition would serve the sentencing purposes of deterrence, public protection, and rehabilitation. *Id.*; *see* 18 U.S.C. §§ 3553(a), 3583(d). The district court acted well within its discretion in making this determination; indeed, it was entirely reasonable to find that the search condition was an appropriate measure for discouraging Poole from engaging in further illegal drug activity and, in turn, protecting the public from such activity while helping Poole rehabilitate himself as a member of society. *See United States v. Monteiro*, 270 F.3d 465, 469 (7th Cir. 2001) (concluding that permitting warrantless searches "upon demand," after the defendant had exhibited a pattern of repeated fraudulent conduct, "clearly relate[d] to the goals of rehabilitation and protection" and "deter[red] [the defendant] from engaging in identity fraud after his release").

9

Consistent with our decision in *Oliveras*, the district court also explained that the search condition would enable probation officers to fulfill their statutory obligation to remain informed of Poole's conduct and condition, report such information to the district court, and assist in Poole's rehabilitation. App'x at 79; *see* 18 U.S.C. § 3603 (setting forth the duties of probation officers). We agree. The "governmental interest in supervision, rehabilitation, and societal reintegration supports a suspicionless search of an individual by his probation officer under the special needs doctrine during a term of supervised release because such a search is reasonably related to the probation officer's duties." *Oliveras*, 96 F.4th at 310 (alteration adopted) (internal quotation marks omitted). District courts have discretion to equip probation officers with appropriate tools and instruments to exercise "the considerable investigative leeway they need to monitor an individual on supervised release, such that they can act as the eyes and ears for the court." *Id.* at 311 (internal quotation marks omitted); *see also Schiff v. Dorsey*, 877 F. Supp. 73, 78 (D. Conn. 1994) (Cabranes, *J.*) ("The federal probation officer serves as the court's eyes and ears not only during the presentencing phase, but also while the offender is serving his sentence of probation."). Here, Poole's pattern of illegal drug activity, including while on supervised release, provided a basis for the district court to conclude that constant vigilance would be required to properly supervise him. *See Monteiro*, 270 F.3d at 469 (concluding that the district court "acted well within its discretion" by imposing a suspicionless search condition when it explained that the defendant's "history of fraudulent endeavors demonstrated the need for 'exceptional

vigilance' on the part of law enforcement officials to discourage recidivism"). Accordingly, this case falls squarely within the category of cases in which the Fourth Amendment's "special needs" doctrine permits the imposition of a suspicionless search condition. *See Oliveras*, 96 F.4th at 301–02.

*Oliveras* also directs courts to address whether the imposition of a suspicionless search condition constitutes a "greater deprivation of liberty than is reasonably necessary for the purposes of sentencing," *id*. at 314 (internal quotation marks omitted), a mandate the district court adequately fulfilled here. In reaching this conclusion, we reject Poole's argument that, given the probation officers' discovery of his previous release violations without a suspicionless search, less restrictive conditions would adequately serve the statutory sentencing objectives. We have previously suggested, and we now make clear, that probation officers need not "rely on the occurrence of an extraordinary circumstance to properly supervise" a defendant. *See United States v. Dority*, No. 23-7696-CR, 2024 WL 4634938, at *3 (2d Cir. Oct. 31, 2024) (summary order). Probation officers discovered that Poole was in possession of drugs and drug paraphernalia only after they received information from a source regarding his drug activity and then coincidentally observed synthetic marijuana in plain view at Poole's residence, which permitted a broader search. App'x at 55. This fortuitous chain of events is unlikely to occur again. A district court need not leave its supervision of an offender to the vagaries of chance. Rather, Poole's pattern of repeated drug infractions, which continued while he was

11

under supervision, provided a sufficient basis for the district court to conclude that less restrictive conditions would be inadequate and that the imposition of a suspicionless search condition would not effect a greater deprivation of liberty than reasonably necessary.

Nor was it improper, as Poole suggests, for the district court to rely on his drug offenses when deciding to impose the challenged search condition. In *Oliveras*, we explained that district courts may not presume "that a suspicionless search condition is warranted in every drug case unless a defendant can demonstrate otherwise." 96 F.4th at 315. In explaining that district courts may not rely *exclusively* on "generalized considerations" to impose the condition in drug cases, *id*. at 314, we did not suggest (much less hold) that drug-related infractions can never serve as a basis for doing so. To the contrary, we recognized that there are "valid reasons . . . why a suspicionless search could be reasonably related to the relevant factors . . . in cases involving drug offenses." *Id.* (emphasis omitted). Here, far from relying on a general presumption that the search condition was appropriate simply because this is a drug case, the district court provided case-specific reasons why Poole's conduct warranted imposition of the condition; this is precisely the type of "individualized assessment" our precedent requires, *see id.* at 315; *Eaglin*, 913 F.3d at 94, 100.

In short, the district court adequately explained why the circumstances of this case warranted subjecting Poole to suspicionless searches as a condition of his supervised release, and its reasoning is well supported by the record. Accordingly, we hold that the

12

imposition of the search condition was both procedurally and substantively reasonable.

## III.    Conclusion

The case at hand provides an example of how and when a district court may properly subject a defendant to suspicionless searches as a condition of supervised release.  We do not suggest that the facts of this case present a threshold below which a suspicionless search condition may not be imposed.  Nor do we suggest that a district court's discretion to impose such a condition extends only to cases in which a defendant has previously violated the terms of his supervised release.  Rather, this case illustrates one scenario in which all the prerequisites for imposing a suspicionless search condition, as set forth in *Oliveras*, have been met.

In sum, we hold that the district court did not abuse its discretion in subjecting Poole to suspicionless searches as a condition of his term of supervised release.  We therefore AFFIRM the judgment of the district court.